Breitel, J. (dissenting in part).
I would reverse but dismiss the petition.
The enactment of the relevant amendments to section 71 of the Mental Hygiene Law in 1964, providing for the conditional retention of mental patients on a voluntary basis, followed shortly on the publication of a careful and detailed study of the commitment of mental patients (Mental Illness and Due Process: Report and Recommendations on Admission to Mental Hospitals under New York Law, by the Special Committee to Study Commitment Procedures of the Association of the Bar of the City of New York, in Cooperation with the Cornell Law School *396 [1962]).* To be sure, under section 71, voluntary patients do not receive the periodic court review of their status as do involuntary patients, and this difference in handling was manifestly very deliberate (see Mental Hygiene Law, §§ 73, 74, 88). But the statute adequately protects the interests of the voluntary patient by requiring that he be advised on admission of his rights to release at his will, upon 10 days’ written notice, and of the availability, at any time, of advice and help from the Mental Health Information Service upon request. Most important, he must receive similar advice once each 120 days (subds. 1, 4). In short, definite, albeit different procedures are provided for the protection of various classes of patients. No class is neglected, and the differentiation is rationally based.
Indeed, each of the four Appellate Divisions in the State, pursuant to section 88 of the Mental Hygiene Law, have adopted detailed rules organizing the Mental Hygiene Information Services in the respective departments and providing explicit directions for the duties to be performed by the service. In each of the sets of rules governing the duties of the director there is a provision reading substantially as follows: ‘ ‘ The director shall ascertain that the notices required under article 5 of the Mental Hygiene Law to be given to patients and to other persons entitled to such notices have been duly served and that there has been compliance with the procedures required by article 5 of the Mental Hygiene Law for the hospitalization, transfer, retention or release of patients ” (e.g., 22 NYCRR 622.2 [e]).
Section 71 is, of course, included in article 5 of the Mental Hygiene Law.
If it be considered that, in the unusual case, an incompetent may not understand fully his rights when so advised, there is no practical risk. If his understanding is so deficient, he is hardly qualified to be released, thus answering the question considered in the mandatory court review of detention provided for involuntary patients. The available interposition of the Mental Health Information Service, one of the hopefully great *397 achievements of the new legislation, is a factor of considerable significance.
The greatest difficulty engendered by the majority holding is that it defeats one of the likely benefits derived from voluntary admissions, or from the conversions of commitment to that of ; voluntary status. It would require the same repeated judicial hearings for voluntary patients as for involuntary patients, thus i adding to the burdens of the institutions and the courts, and j doing so needlessly. Moreover, the very consideration of the study committee, recognized in the majority opinion, of the salutary effect of voluntary status may be impaired by repeated judicial proceedings, or worse, remove the incentive of the institutions to arrange for conversions of status. Since there is no real risk of injustice to patients, all these considerations should be given their intended weight.
On this view of the plainly directed procedures for voluntary patients and a practical evaluation of how they are designed to function, it is difficult to find any substantial constitutional objection in this particular aspect to these very carefully drawn and considered statutes.
Petitioner, the committee for the person (as well as of the property) of the patient in this case, raises an entirely different issue than that on which the court is deciding the case. He objects to an adjudicated incompetent being regarded as capable of giving consent. The statutory answer, liberally construed to effect its evident purpose, is explicit. Section 71 provides: “ No requirement shall be made, by rule, regulation or otherwise as a condition to admission and retention pursuant to this section that any person applying for admission shall have the legal capacity to contract ” (subd. 5). But for that provision, a committee for the person, charged as he is with the care of the person of the adjudicated incompetent, would, on general principles, be a necessary party to any conversion of status, and, indeed, his consent would probably be required. But the committee’s powers are derived from a statute and they can be limited, therefore, by another statute. Nor does the committee’s existence raise any constitutional problem different from that already discussed, where the mentally ill person has no committee or has not been adjudicated incompetent as to the care of his own person. In the light of the periodic mandatory advice *398 given to voluntary patients, and the availability of the Mental Health Information Service, there is no constitutional infirmity in the statute.
Finally, if, as the majority holds, the statute is so constitutionally deficient, it is not appropriate to save it by a major judicial gloss that is so obviously contrary to the manifested intention of the Legislature in omitting judicial procedures from voluntary admissions or conversions. Moreover, the risk is much too great that the application of the gloss is contraindicated by facts and experience with respect to the voluntary status of mental patients, considered by the drafters of the statute. Such facts and experience are not available and are not made available to the court in this case which involves but a single patient and but a narrow issue raised by her committee. As to this case, there is not the slightest suggestion that there was any injustice, and the committee raises only the legal issue of the patient’s competence to consent to a change of status.
Accordingly, I dissent and vote to reverse the order of the Appellate Division and dismiss the petition.
Judges Burke, Scileppi and Bergan concur with Chief Judge Fuld; Judge Keating concurs in result in a separate opinion; Judge Breitel dissents in part and votes to reverse and dismiss the petition in an opinion in which Judge Jasen concurs.
Order reversed, without costs, and matter remitted to Supreme Court, Suffolk County, for further proceedings in accordance with the opinion herein.

 It should be noted, however, that drafts of the legislation eventually enacted (Mental Hygiene Law, §§ 70-78, 80-84, 87, 88), were not attached as proposals to the report, and there are some provisions in the new statutes not discussed in the report.